UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| **THOMAS C. HOOD** | * | CIVIL ACTION |
| | * | |
| | * | |
| | * | CASE NO. |
| vs. | * | |
| | * | SECT. |
| | * | |
| | * | MAGISTRATE |
| **CSX TRANSPORTATION, INC.** | * | |
| | * | JURY TRIAL DEMANDED |

*********************************************************************

## COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY

Thomas C. Hood ("Complainant" or "Hood"), through undersigned counsel, hereby submits the following complaint against the CSX Transportation, Inc. ("CSX") pursuant to §20109 of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109, for the reasons set forth below:

**Parties**

1. Plaintiff, Thomas C. Hood, is a resident of the State of Indiana and resides in Anderson, Indiana.

2. Defendant, CSX Transportation, Inc. (hereinafter "Defendant" or "CSX") is a Florida corporation with its principal place of business in Jacksonville, Florida.

3. Defendant is and has been doing business, and has committed acts and caused damages, in this judicial district at all times relevant hereto.

**Jurisdiction and Venue**

4. This Court has original jurisdiction pursuant to 49 U.S.C. §20109(d)(3) because a complaint was timely filed with the Secretary of Labor within 180 days of the adverse action that

is at issue herein, the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint, and the delay in filing this action was not due to the bad faith of Plaintiff. Pursuant to FRSA 49 U.S.C. 20109(d)(3), the plaintiff now is bringing this original action at law and equity for de novo review by a United States District Court which has jurisdiction over this FRSA action without regard to the amount in controversy.

5. Furthermore, this is an action between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs. Accordingly, subject matter jurisdiction herein is also based upon 28 U.S.C. §1332.

6. Venue is proper in this judicial district pursuant to 29 U.S.C. §2617, and 28 U.S.C. §1391(b) and (c) because Defendant is doing business and "resides" in this judicial district as defined by 28 U.S.C. §1391(c), a substantial part of the events or omissions giving rise to this claim occurred in this district and Defendants have violated Federal laws in this district.

**FACTS**

7. At all times pertinent herein, Hood was working as a conductor for CSX Transportation in Evansville, Indiana and was a member of the United Transportation Union ("the union"). The job was strenuous and required him to be able to lift over 20 pounds.

8. Pursuant to a Collective Bargaining Agreement ("CBA") with the union, CSX has an Off-Track Vehicle ("OTV") benefits policy wherein Hood and other similar workers are to receive 80% of their full-time weekly compensation for any time lost due to an injury incurred while traveling in an OTV. The benefits are payable as long as the employee is disabled up to a maximum of two years from the date of the injury. Pursuant to the policy, workers are also entitled to reimbursement of any out-of-pocket medical expenses that are not covered by any applicable

medical insurance. The policy is not limited to any type or degree of injury, nor does it impose any other conditions for an employee to recover benefits. The employee must only establish that an injury was sustained while riding in an OTV and the employee lost time as a result.

9. On or around October 18, 2018, Hood dismounted a locomotive and boarded an OTV sanctioned by CSX to transport Hood from one work location to another to retrieve train documentation. When the OTV driver attempted to answer her mobile phone, in violation of company policy and state law, she lost control of the vehicle and drove into a ditch, causing Hood to sustain neck and shoulder injuries that will require surgery. When she quickly returned the vehicle to the road, the sudden motion caused Hood to sustain neck and shoulder injuries that will require surgery before he can return to work as a conductor. Mr. Hood was 31 years old at the time of the accident with no prior injuries or major health issues.

10. On the same date as the accident, Hood timely filed an injury report with CSX, which included a Physician's Initial Report documenting his injuries.

11. As a result of the OTV injury, Mr. Hood initially began receiving OTV benefits including 80% of his full-time weekly compensation.

12. Shortly after reporting the incident and while trying to arrange for medical care, Hood was informed by a superintendent that he was classified as "off medical" instead of "on-duty injury" despite the indisputable fact that Hood was injured due to a workplace accident. CSX first classified Hood "off medical" and not "on duty injury" on October 27, 2018, a mere 9 days after his accident. When Hood questioned the classification, the superintendent told him "not to worry about how he was marked off." As recently as January 13, 2020, CSX again classified him as "sick, then medical and not personal injury." The erroneous and punitive classification is

significant. When an employee such as Hood suffers a workplace injury, CSX pays the medical bills while it does not if treatment is related to a personal medical condition.

13.     CSX also categorized the accident as a "non-FRA reportable incident" and "a personal medical issue" despite the indisputable evidence that the incident occurred while Hood was on duty. Failing to report the incident to the Federal Railroad Administration clearly violates the applicable provisions of the Federal Railway Act, 49 U.S.C. 20101. The refusal to report the incident further illustrates CSX's malicious and deceptive intent with respect to addressing workplace injuries, such as that involving Hood.

14.     As a result of the OTV injury, Hood filed a claim for OTV benefits in January 2019 and CSX immediately began its relentless harassment. In response, CSX's Director of Employee Relations sent a letter dated January 31, 2019 denying the claim "in its entirety" because it was filed by Hood's attorney ("counsel").

15.     Then CSX began sending a myriad of harassing letters alleging that Hood was not sending proper supporting medical documentation and threatened discipline though Hood had in fact been continuously sending the requisite documentation.

16.     Unexpectedly and without warning, on or around January 10, 2020, while Hood remained disabled and was awaiting surgery, Hood's OTV benefits were discontinued, including his payments of 80% of his full-time weekly compensation. Furthermore, his medical payment reimbursements were discontinued so his scheduled surgery has remained delayed indefinitely.

17.     Upon termination of the benefits, Hood contacted CSX on January 28, 2020 requesting an explanation for the sudden discontinuance. On January 29, 2020, a CSX manager responded that Hood's benefits were discontinued allegedly because Hood had not been updating

his medical records and requests for same were returned undeliverable. Specifically, the manager claimed that "throughout 2019, we have sent letters to Mr. Hood's address of record regarding lack of medical documentation, but those letters were returned. It appears that Mr. Hood recently updated his address." Hood remained at the same address throughout all events described herein and CSX was sending the requests to a PO box that did not belong to Hood.

18. By letter dated February 19, 2020, Hood advised CSX that it already had the requisite medical documents in its possession, including:

    a. At least as early as February 12, 2019, Hood requested OTV benefits in writing which included a Patient Visit and Summary from St. Vincent Occupational Medicine Clinic dated November 5, 2018 and a disability letter signed by his healthcare provider dated January 14, 2019.

    b. On April 2, 2019, CSX's Director of Relations, sent a letter to Hood stating "we have determined that Claimant was involved in an off-track vehicle accident" occurring while taxiing to retrieve paperwork.

    c. On April 25, 2019, Mr. Hood forwarded to CSX primary source medical records to further support his claim and documenting his injuries, medical treatment, and disability.

    d. On January 30, 2020, Hood further supplied a Supplemental Doctor's Statement furthering substantiating his ongoing disability.

    e. An email from CSX's Medical Department dated February 6, 2020 informed Hood that the "documentation provided is sufficient to support Mr. Hood's continued absence."

    f.   Indiana University surgical consult summary visit on February 17, 2020;

    g.   Medical Note written from a healthcare provider dated January 6, 2020 which states that Mr. Hood is still having trouble with pain and weakness, that he has an appointment scheduled with his pain management doctor at the end of the month, and in which a referral to a neurosurgeon is made;

    h.   Medical Note from Advanced Neurology and Spine, dated October 30, 2019.

19.    On February 3, 2020, a CSX supervisor incredulously notified Hood that he had failed to provide any medical documentation to support his absence and that his absence was unauthorized. The supervisor also advised Hood that if he did not request a seniority hearing within thirty (30) days of the letter, he would be removed from the seniority roster and that he "will forfeit whatever right (he) might otherwise have to resume (his) employment."

20.    In an email exchange February 21-February 28, 2020, a CSX representative confirmed that Hood's "medical return to work date is January 21, 2021."

21.    In another email chain, CSX acknowledged receiving medical updates but was considering whether it could actually recover any OTV benefits previously paid. CSX also again classified Hood's injury as "a personal medical issue."

22.    In spite of the aforementioned communications clearly indicating that Hood reported and thoroughly substantiated an OTV claim, and his qualified status was repeatedly acknowledged by CSX in several communications, by letter dated February 28, 2020, CSX incredulously informed Hood "the records do not substantiate that your ongoing injuries are related to the initial OTV accident."

23. CSX's assertions were particularly absurd considering all medical documentation clearly attribute Hood's injuries to his OTV accident, and he had no other accidents or injuries whatsoever before or after his OTV accident, much less any accidents or injuries similar to his OTV injuries.

24. Finally, via an email dated March 23, 2020, CSX notified Hood that his "claim remains denied for the same reasons identified in our February 28, 2020 letter.

25. Hood eventually learned that CSX shifted from its repeated assertion of lack of documentation to the argument that Hood's injury is not as severe as his physicians contend. CSX relies solely on the biased conclusions of its former Chief Medical Officer ("CMO") who has almost exclusively worked or consulted for railroads, is currently a CSX consultant, has not actually seen a patient since 2012, never examined a sick or an injured patient, and was merely an administrator. In fact, he has never even met Hood much less interviewed, examined or spoke with him. Based solely on a review of medical documentation, the CMO concluded that Hood's ongoing medical conditions were unrelated to the initial OTV incident.

26. CSX relied upon such biased conclusions despite Hood's treating physician directly relating his injuries and the need for surgery to his OTV accident.

27. By arbitrarily and without warning discontinuing Hood's OTV benefits, and then clumsily attempting to substantiate its actions with unsustainable excuses, such as lack of medical documentation and causation, when it clearly had plenty of supporting documentation, later admitting it had sufficient documentation, admitting that benefits would continue until 2021, then once clearly possessing all possible medical documentation, immediately shifting the narrative that

somehow the injury was related to another issue when Hood had no other medical issue, is clearly indicative of retaliation for reporting an injury.

28. On July 3, 2020, Plaintiff timely filed a whistleblower complaint with the U.S. Department of Labor-OSHA.

29. The OSHA investigator erroneously dismissed the complaint on February 24, 2022 and Plaintiff timely filed objections and a request for hearing with the Office of Administrative Law Judges on March 24, 2022.

30. The Secretary of Labor has yet to issue a final decision with respect to the complaint, and Plaintiff is therefore exercising his right to proceed in a district court of the United States pursuant to the "kick out" provision of the FRSA, 49 U.S.C. 20109(d)(3).

## VIOLATIONS AND RELIEF SOUGHT

31. Section 20109 of the Federal Rail Safety Act, 49 U.S.C. § 20109, provides that a railroad engaged in interstate commerce (such as CSX) shall not, among other things, reprimand, punish, or discharge an employee for reporting a work-related injury, or for following the orders of a treating physician because of the work-related injury.

32. CSX retaliated against Hood by arbitrarily withholding his OTV benefits, subjecting him to prolonged delay tactics when asked to reinstate such benefits, threatening termination and his seniority unless he subjected himself to an investigation, and ultimately denying his previously approved claim, all in response to his engaging in protected activity, in clear violation of 49 U.S.C. § 20109.

33. The phony excuse for denying his claim after months of delay and proffering of other flimsy excuses, i.e., that he provided inadequate medical documentation, then approving his

claim only to somehow conclude that the medical condition was somehow unrelated to his OTV injury is clearly retaliatory, particularly considering that no one disputes that he was actually injured, and there is not a single shred of medical evidence that his injuries could have been related to anything other than his OTV accident.

34. The act of threatening an investigatory hearing and termination is likewise an adverse action under the FRSA, 49 U.S.C. §20109, since there was no evidence that he was injured anywhere other than at work while riding in an OTV.

35. Having known of his injuries since the date of the accident as clearly set forth herein, CSX knew that Hood was engaged in activity that was protected under Section 20109.

36. CSX's decision to terminate Hood's OTV benefits was motivated at least in part by its longstanding policy and history of discouraging injury reporting and retaliating against employees who in fact report workplace injuries.

37. CSX's proffered reasons for first stopping, then delaying, and ultimately denying his OTV benefits were not true or remotely defensible reasons but instead pretexts.

38. Unless OSHA and the Department of Labor stop CSX's improper, outrageous, and habitual pattern of punishing, firing and/or threatening to fire employees, such as Hood who engage in the protected activity of reporting job-related injuries, CSX will have succeeded with intimidating employees from reporting such injuries.

39. As a result of the CSX's unlawful activity, Hood is entitled to all "make whole" relief pursuant to 49 U.S.C. 20109 (e) including reinstatement with the same seniority status and benefits he had prior to the discriminatory treatment, expungement of his disciplinary record, any applicable back pay with interest, compensatory damages and economic loss, including all unpaid

OTV benefits, compensation for any special damages sustained as a result of the discrimination, litigation costs, expert witness fees, unlimited damages for emotional distress and reasonable attorney fees. Moreover, CSX should be subjected to a hefty sanction of punitive damages of up to $250,000 under 49 §20109 (e)(3) to deter it from continuing to engage in the outrageous practice of disciplining, threatening to discipline, punishing, or firing employees who report workplace injuries.

40.     Plaintiff hereby demands a trial by jury according to Fed. Rule Civ. Pro. 38.

WHEREFORE, Plaintiff, Thomas C. Hood, prays for entry of judgment against Defendant for all damages and equitable relief to which Plaintiff may be entitled, including:

A. reinstatement with the same seniority status and benefits he had prior to the discriminatory termination;

B. expungement of his disciplinary record;

C. any applicable back pay with interest;

D. compensatory damages and economic loss;

E. special damages sustained as a result of the discrimination;

F. all unpaid and due OTV benefits;

G. all litigation costs and expert witness fees;

H. unlimited damages for emotional distress;

I. punitive damages of up to $250,000 under 49 §20109 (e)(3) to deter CSX from continuing to engage in the outrageous practice of firing employees who report workplace injuries;

J. all attorneys' fees and costs incurred in prosecuting this action.

RESPECTFULLY SUBMITTED,


**/s/ kurtis g fouts**
Kurtis G. Fouts, Attorney at Law (IN Bar no. 20584-08)
PO Box 123
1001 South Washington St., Suite B1
Delphi, IN 46923
Telephone: (765) 201-5876
Email: kurtis@foutslaw.com